JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Michael Frazier, appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we affirm the lower court.
 I. {¶ 2} According to the record, on January 19, 2006, the Cuyahoga County Grand Jury indicted appellant with a five-count indictment in Case No. 05-475875. The first count alleged aggravated robbery in violation of R.C. 2911.01, and the second and third counts alleged felonious assault in violation of R.C. 2903.11. Each of the first three charges also included one-and three-year firearm specifications in violation of R.C. 2941.141 and 2941.145 respectively. Counts four and five alleged that appellant had a weapon while under disability in violation of R.C. 2923.13.
 {¶ 3} Appellant exercised his right to a jury trial on counts one, two and three and tried counts four and five to the bench. The trial began on April 19, 2006. On April 20, 2006, the jury found appellant guilty of the felonious assault charges and not guilty of the aggravated robbery. The trial court also found appellant guilty of one count of having a weapon while under disability. On April 21, 2006, the trial court sentenced appellant to five years on the felonious assault, consecutive to the three-year firearm specification, and one year concurrent on the weapon while under disability charge. Accordingly, the court sentenced appellant to a total of eight years in prison. This appeal follows. *Page 3 
 {¶ 4} The facts adduced at trial demonstrate that on November 29, 2005, at approximately 7:47 a.m., appellant robbed and shot the victim, Marshall Herring. Herring went to work on the day in question and was told that he was not needed on that day. He then left work at about 7:15 a.m. and began to drive to his girlfriend's house. He parked his car on East 118 Street and went into the gas station on the corner. Appellant approached Herring just after he left the gas station and said, "You know what this is." Appellant then produced a .38 or .357 handgun. Herring then responded by saying, "Man, I know you ain't trying to rob me. Man, I ain't got no money."[1] Appellant then responded, "Man, you know what it is. You ain't on it."[2] Herring understood that appellant was not playing with him. Appellant then shot the victim once in the kneecap. A passerby in a car saw that the victim was shot and called 911. The caller left the scene before the police arrived. Cleveland police and EMS arrived at the scene and the victim was rushed to the hospital.
 II. {¶ 5} First assignment of error: "Prejudicial error was committed by the admission of other acts testimony in violation of R.C. 2945.59, Evid.R. 404(B) and the appellant's rights under Article 1, Section 16 of the Ohio Constitution and the 14th Amendment of the United States Constitution." *Page 4 
 {¶ 6} Second assignment of error: "Appellant's convictions were against the manifest weight of the evidence."
 III. {¶ 7} Because of the substantial interrelation between appellant's first two assignments of error, we shall address them together. Appellant argues first that the lower court erred in admitting evidence of other acts testimony and, second, that the convictions were against the manifest weight of the evidence. In his first argument, appellant argues that the trial court erred by admitting evidence that he was convicted of domestic violence. Appellant further argues that the evidence did not meet any of the exceptions to admissibility found in Evid.R. 404(B) or R.C. 2945.59 and should be excluded. Evid.R. 404, "Character Evidence not Admissible to Prove Conduct; Exceptions; Other Crimes," subsection (B), provides the following:
 "Other crimes, wrongs or acts. — Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 8} Appellant contends that the state elicited testimony regarding his domestic violence conviction in contravention of theFourteenth Amendment. However, appellant failed to mention that the probation officer in the case at bar was specifically called to rebut the testimony of appellant's girlfriend. Moreover, the testimony by appellant's girlfriend was an alibi. The alibi was not properly filed. *Page 5 
Moreover, the lower court, upon agreement of the parties, allowed the state to call appellant's probation officer as a rebuttal to the alibi.[3]
 "THE COURT: * * * All right. With respect to the defense now. I think you have a motion? Somebody has a motion.
 MR. GOLISH: Your Honor, I had a motion to strike all her testimony.
 THE COURT: All right.
 MR. GOLISH: Based on the —
 THE COURT: You need to make a record. We did this at sidebar.
 MR. GOLISH: Thank you, Your Honor.
 THE COURT: All right.
 MR. GOLISH: Your Honor, the criminal rules of procedure are clear that when someone has an alibi they must be filed and sworn, given to the prosecution no later than ten days before the commencement of trial. While the witness list was provided, which I still — I never received, but, again, my office —
 THE COURT: It was filed, yes.
 MR. GOLISH: Absolutely. But there was no notice of alibi filed that the defendant was somewhere other than — that someone was going to testify that the defendant was anywhere other than at the scene of the crime. And that's what this — that's exactly what this was. This was an alibi.
 * * * *Page 6 
 THE COURT: Well, her testimony really is — I mean, to call it anything less than an alibi is really not being up-front with this. This is an alibi. It needs to be filed three days ahead so that the State, just like the defense, is required to have everything it needs so there is no surprise. The rule also applies to the defense in this particular case."[4]
 {¶ 9} Appellant opened the door to the probation officer's testimony by calling his girlfriend as a witness. She testified on direct examination that she woke appellant up on the day in question so that he could meet his probation officer at 9:00 a.m. It was appellant, himself, who elicited the testimony and the alibi that he had to meet with his probation officer at 9:00 a.m. and that his girlfriend woke him up so that he could go to that meeting. This was all done during appellant's direct examination of his girlfriend. Appellee never questioned the rebuttal witness as to any prior bad acts nor any conviction for domestic violence. There is no mention of the bad acts (i.e., a conviction for domestic violence), just a description of the probation officer's job, obligations, requirements, and an assessment.[5]
Additionally, no objection was made to any of these questions during the course of the trial.
 {¶ 10} Based on the evidence in the record, we find no prejudicial error on the part of the lower court. Accordingly, appellant's first assignment of error is overruled. *Page 7 
 {¶ 11} Appellant argues in his second assignment of error that the lower court's conviction is against the manifest weight of the evidence. Manifest weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jurors that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, their verdict shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541.
 {¶ 12} As to a claim that a judgment is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. State v. Martin (1983), 20 Ohio App.3d 172, 20 Ohio B. 215, *Page 8 
485 N.E.2d 717. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.
 {¶ 13} The evidence in the case at bar contains substantial testimony supporting the convictions. Officer Jones of the Sixth District Cleveland Police Department responded to the 911 call. While Officer Jones was at the scene, the victim told him that the man who shot him was named Mike and that he was 5'8", 170-180 pounds, and that he lived in the area of East 124 Street and St. Clair Avenue.
 "A. Initially he stated that, `Mike shot me.' I asked him on [the] scene if he knew who [sic] Mike's last name. He said that he didn't know his last name, but he did give me a description. Further follow-up at Huron Road, which is routine — I went to Huron Road, and by the time I had gotten there, he had remembered Michael's last name. * * *
 Q. He gave you the name Michael Frazier?
 A. Yes, he did."[6]
 The victim also described appellant's clothing as a black jacket and a black cap.
 "Q. What was that description? Do you recall?
 A. I told him that he had on all black. He had a black jacket on. And at the time I think he had a cap on, a black cap. *Page 9 
 Q. Size wise, how would you describe him?
 A. Between five-seven, five-eight.
 Q. How much would he weigh?
 A. Anywhere from between 150 pounds to 180."
 In addition to the testimony above, Detective Laurie Terrace testified as to her investigation of the identifying information given by the victim and her development of a photo array, as well as the statement she took from the victim.
 "Q. And what did you do with that information?
 A. I was able to get a photo of Michael Frazier and have the complainant come in, make a statement, and view that photo array.
 Q. Did that occur?
 A. Yes.
 * * *
 Q. And tell me exactly what he did when you showed him that photo array. Tell me first what you told him and then tell me what he did.
 A. Well, I told him that I wanted him to look at a photo array to see if he recognized anyone in the photo array or, you know, recognized the suspect. And he did look at the photo array and immediately chose a photo of Michael Frazier."[7]
 {¶ 14} Detective Terrace testified that all the identifying information given by the victim as to the suspect matched the identifying characteristics of the appellant. *Page 10 
Specifically, the height and weight, as well as the address of appellant as 554 East 124 Street, were all correctly described by the victim. Detective Terrace further testified that the victim identified appellant out of the six photos that were shown to him as the man who shot him.[8]
 {¶ 15} Accordingly, based on the evidence in the case at bar, we find that the convictions were not against the manifest weight of the evidence. The victim gave a detailed physical description of appellant, knew appellant's first and last names, knew appellant's sister, and knew the street appellant lived on. Indeed, the victim knew appellant for more than ten years and picked him out of the six photos the detective showed him.
 {¶ 16} Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 11 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., PRESIDING JUDGE
CHRISTINE T. MCMONAGLE, J., CONCURS; ANN DYKE, J., CONCURS IN JUDGMENT ONLY
[1] Tr. 156.
[2] Tr. 156.
[3] Tr. 233.
[4] Tr. 232-241.
[5] Tr. 244-247.
[6] Tr. 133.
[7] Tr. 198-200.
[8] Tr. 199. *Page 1